54 CCPA
**HUNT FOODS AND INDUSTRIES, INC.,**
Appellant,

v.

**The GERSON STEWART CORP.,**
Appellee.

**Patent Appeal No. 7643.**

United States Court of Customs and Patent Appeals.

Oct. 20, 1966.

---

Von Maltitz, Derenberg, Kunin & Janssen, New York City (Walter J. Derenberg, Louis Kunin, V. T. Giordano, New York City, of counsel), for appellant.

William C. McCoy, Cleveland, Ohio, for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

SMITH, Judge.

The issue is whether the Trademark Trial and Appeal Board erred in finding that registration of applicant-appellee's mark would not "be likely, when applied to the goods of applicant, to cause confusion, or to cause mistake, or to deceive."[1] Section 2(d), Trademark Act of 1946, 15 U.S.C. § 1052(d). Applicant sought to register "HUNT" for "General Purpose Cleaning Compounds."[2] Appellant-opposer is the owner of a plurality of registrations of marks consisting of "HUNT" and the possessive form thereof, "HUNT'S," for a long list of canned food products.[3] The board, with one member dissenting, dismissed the opposition stating in summary:

\* \* \* And, all things considered, it is our opinion that canned foods and cleaning preparations are such distinctly different products that there is no reasonable likelihood of purchasers ascribing a common origin thereto were they to be sold under the name "HUNT" or "HUNT'S".

This appeal appears before us in the following posture. Both parties submitted evidence in support of their respective positions. Appellant submitted the results of a consumer survey involving 502 housewives and appellee submitted four third-party registrations.[4] Appellee here submits the case on the record, no brief having been filed and absent any oral argument.

Appellant's arguments here, in summary, are as follows: Appellant's trademark HUNT'S is a well known mark entitled to broad protection, the evidence of record showing advertising expenses since 1943 of more than 46 million dollars, and sales, since 1944, in excess of 1 billion dollars. As factors tending to establish a likelihood of confusion, appellant argues that the marks and the chan-

---

1. Notice of Opposition No. 40,905 filed April 26, 1961.

2. Trademark application filed August 3, 1960.

3. Reg. No. 573,487, issued Apr. 21, 1953 to Hunt Foods, Inc.; Reg. No. 437,875, issued Mar. 30, 1948 to Hunt Brothers Packing Company; Reg. No. 426,367, issued Dec. 24, 1946 to Hunt Foods, Inc.; Reg. No. 420,951, issued May 7, 1946 to Hunt Brothers Packing Company; and Reg. No. 420,786, issued Apr. 30, 1946 to Hunt Brothers Packing Company.

---

4.

| Reg. No. | Date | Trademark | Goods |
| --- | --- | --- | --- |
| 256,502 | May 21, 1929 | HUNT PUTTY and Design | Putty |
| 318,324 | Oct. 23, 1934 | HUNT'S | Port wine |
| 531,394 | Sept. 26, 1950 | HUNT'S and Design | Shampoos and "bubble bath" soaps |
| 705,789 | Oct. 18, 1960 | HUNT | Photographic developers, chemicals and compounds |

nels of trade are identical; that other well known trademarks have been used concurrently for food products and cleaners; that appellant is the prior user and registrant of HUNT'S for a product used in cleaning; and that doubt should be resolved against the applicant. Appellee's defenses relating to surnames, registrations of third parties, and "unclean hands" are allegedly insufficient.

Appellant's case is well summarized in the opinion of the dissenting board member:

> While canned food products and a general purpose cleansing compound are clearly distinct, have different uses and are non-competitive, they do, nevertheless bear some relation to each other. General purpose cleansing compounds and canned food products are sold to the same purchasers, at the same time, in the same manner and in the same place. It has been shown that "HUNT'S" food products and general purpose cleaners have sometimes been displayed closely together and that retailers have promoted such goods in a single advertisement. Thus, the parties' products are related as to their manner of promotion, distribution and purchase. Purchasers well familiar with "HUNT'S" canned food products and desirous of purchasing a general purpose cleansing compound could be immediately confronted with a display of "HUNT" general purpose cleaner and would, in my judgment, reasonably and logically assume a connection or association between the two as to source or sponsorship. This is borne out by the testimony of housewives who indicated an awareness that certain manufacturers produced both food and detergent products.

The majority of the board, however, were of the view that a "rather commonplace surname," "Hunt" was involved and the respective products were so "unrelated" and "distinctly different" that there was no reasonable likelihood of purchasers ascribing a common origin to the products, stating:

> * * * opposer argues that confusion would be likely because its canned

food products and cleaning preparations of the character sold by applicant are offered for sale in all types of supermarkets and groceries, but this factor is considered not to be of controlling importance herein since it is common knowledge that such stores sell an infinite variety of wholly unrelated products, as for example, toothpicks, clothing, hardware items, toilet articles, light bulbs, cigarettes, toys, soft drinks, and the like. * * *

The evidence of record shows, on appellant's behalf, several factors tending to establish a relationship between the respective products. As appellant's brief points out:

> As is well known, and as the record shows, general purpose cleaners and related products are commonly sold to the general public in all types of supermarkets, groceries, etc. * * *
>
> * * * * * *
>
> * * * In many of such stores—particularly the smaller establishments—opposer's food products and cleaners, detergents, soaps, etc. are often stacked in the "same sections" or "back to back" * * * or in adjoining aisles * * *. Moreover, opposer's products frequently have been set up in numerous special displays—featuring its HUNT'S trademark—next to the general purpose cleaners, detergents and soaps in many stores * * *.
>
> * * * * * *
>
> The respective products are also likely to be displayed together under the parties' identical marks in the same advertisements of supermarkets and other retail food stores. * * *
>
> The respective products are thus related as to their manner of promotion, distribution, purchase and intended users. Moreover, the goods are all inexpensive kitchen or pantry items which are "not apt to be purchased with any degree of discrimination on the purchasers' part * * *."
>
> * * * * * *

Other famous food trademarks have, in fact, been used concurrently by their

owners to identify food products and cleaners. * * *

The above statements are supported by evidence of record and were not contradicted by appellee. In addition, appellant submitted the results of a survey wherein, according to the majority of the board, at least 70 of 502 housewives interviewed named a product of opposer's when asked to name any additional products made by the makers of "HUNT General Purpose Cleaning Compound."[5]

### Opinion

Section 2(d) of the Trademark Act of 1946 does not set forth special rules regarding the registration of marks involving surnames in determining the issue of likelihood of confusion. See Alfred Electronics v. Alford Mfg. Co., 333 F.2d 912, 51 C.C.P.A. 1533; John W. Taylor Packing Co. v. Taylor Sales, Inc., 139 USPQ 59 (TTAB); E. I. du Pont de Nemours & Co. v. National Sure-Fit Quilting Co., 137 USPQ 317 (TTAB). Cf. Section 2(e), Trademark Act of 1946, 15 U.S.C. § 1052(e). Here we think the evidence shows that opposer possesses a strong trademark entitled to broad protection which is a factor to be considered in resolving the issue of likelihood of confusion. See Tiffany & Co. v. Tiffany Tile Corp., 345 F.2d 214, 52 CCPA 1396.

The fact that the goods are not of the same descriptive properties is also not *controlling* under the terms of the Trademark Act of 1946. Elizabeth Kent Cosmetics v. G. B. Kent & Sons, Ltd., 309 F.2d 775, 50 CCPA 738. As stated in Hollywood Water Heater Co. v. Hollymatic Corp., 274 F.2d 679, 680, 47 CCPA 782, 784:

* * * Section 2(d) of the Trademark Act of 1946 and the unquestioned weight of modern authority in this field does not require a finding of confusing similarity of goods as the basis for sustaining a trademark opposition

but instead requires us to determine whether it is "likely" that the mark when applied to the goods of the applicant will cause confusion or mistake or deceive purchasers.

Nor are we concerned on the present record with appellee's argument below that the manner of sale and distribution or class of purchasers are different. These limitations are not reflected in the application for registration and applicant's stated desire is to expand his market to the general public. Merritt Corp. v. Sterling Drug, Inc., 277 F.2d 956, 47 CCPA 937. "[T]he likelihood of confusion must be determined on the basis of the 'goods covered in appellant's applications.'" California Stucco Products of New England, Inc. v. Maas & Waldstein Co., 272 F.2d 398, 399, 47 CCPA 732, 734.

Applicant seeks registration of the mark "HUNT" for a "General Purpose Cleaning Compound." The evidence of record shows that such products are relatively inexpensive, and are intended for the general public just as opposer's products. The respective products often appear side by side in stores and frequently appear in the same advertisements of stores. Thus while the descriptive properties of the respective goods are different, we think the evidence of record establishes a *likelihood of confusion* among purchasers such as to preclude federal registration by appellee.

There remains for consideration certain defenses of appellee. Appellee offered 4 third-party registrations "for the purpose of indicating that the word 'HUNT' is in the nature of a surname, although registrable."[6] The thrust of this alleged defense is not clear. Appellee does not claim that "HUNT" is its surname. See Vandenburgh, Trademark Law & Procedure 78–82 (1959). And, as stated earlier, under section 2(d) the issue of likelihood of confusion is not

---

5. The dissenting member of the board states that "81 persons of the 502 interviewed clearly associated 'HUNT' gen- eral purpose cleaning compound with opposer or opposer's food products."

6. See footnote 4, supra.

somehow changed or different here because opposer's mark is a surname.

 Third party registrations are of some evidentiary value in determining the scope of protection (see Vandenburgh, supra, at 64–66) or the distinctiveness of a trademark. Clinton Detergent Co. v. Procter & Gamble Co., 302 F.2d 745, 49 CCPA 1146. However, as we stated in In re Helene Curtis Industries, Inc., 305 F.2d 492, 494, 49 CCPA 1367, 1371:

> * * * We will not assume any knowledge on the part of the purchasing public of mere registrations in the Patent Office and neither will we assume that marks are in continuing use, so as to have had any effect on the mind of the purchasing public, merely because they have been registered. * * * .

Additionally, the nature of the products covered by the third-party registrations is a factor to be considered in determining the distinctiveness of the mark in relation to the issue of likelihood of confusion, Price-Pfister Brass Mfg. Co. v. Milwaukee Faucets, Inc., 311 F.2d 817, 50 CCPA 898.

Considering the four registrations offered, one has been cancelled, and the remaining three cover putty, wine, and photographic chemicals, respectively. There is no evidence of record as to the effect, if any, of the above marks on the mind of the purchasing public, *Helene Curtis Industries,* supra, and putty and photographic chemicals are dissimilar goods in relation to the goods under consideration here. See Conde Nast Publications, Inc. v. American Greetings Corp., 329 F.2d 1012, 51 CCPA 1176.

Considering the evidence of record we do not find the third-party registrations sufficient evidence to prove that appellant's marks are lacking in distinctiveness or entitled only to narrow protection in relation to the issue of likelihood of confusion. See *Price-Pfister Brass Mfg. Co.,* supra.

Appellee also argued below that appellant has "unclean hands" in that appellant's registrations Nos. 437,875, 420,786, and 420,951 allegedly were procured through "acts of fraud [and] deceit" in the Patent Office. Appellee contended that the marks covered by these registrations were not used on certain of the goods set forth therein prior to the filing of these applications.

The board held that this defense would not be considered in the absence of a counter claim for cancellation, Contour Chair-Lounge Co. v. Englander Co., 324 F.2d 186, 51 CCPA 833, and also that the record was "inconclusive on the issue raised." We find no error in the board's decision in this respect.

For the above reasons the decision of the board must be reversed.

Reversed.

WORLEY, C. J., concurs in the result.