**UNITED STATES PATENT AND TRADEMARK OFFICE**
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513


**Mailed:**  July 31, 2009

Lacoste Alligator S.A.

v.

Maxoly, Inc.

Opposition No. 91177866


The attached decision, which originally issued on April 27, 2009 as "NOT CITABLE AS A PRECEDENT OF THE TTAB," has been redesignated as "A PRECEDENT OF THE TTAB."


*By the Trademark Trial
and Appeal Board*

THIS OPINION IS A
PRECEDENT OF THE TTAB

Issued: April 27, 2009
Re-Designated as Precedent: July 31, 2009

**UNITED STATES PATENT AND TRADEMARK OFFICE**

_____

**Trademark Trial and Appeal Board**

_____

Lacoste Alligator S.A.
v.
Maxoly, Inc.

_____

Opposition No. 91177866
to application Serial No. 78933465
filed on July 20, 2006

_____

Richard Z. Lehv of Fross Zelnick Lehrman & Zissu, P.C. for
Lacoste Alligator S.A.

Maxoly, Inc. *pro se.*

_____

Before Kuhlke, Bergsman and Ritchie, Administrative
Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Maxoly, Inc. ("applicant") filed a use-based

application on the Principal Register for the mark COLBA

ISLAND and design, shown below, for "belts, caps, pants,

shirts, shoes, shorts and t-shirts," in Class 25.



Applicant claimed June 8, 2006 as its date of first use anywhere and first use in commerce.  Applicant described its mark as "a drawing of an alligator in the general shape of the island of Cuba and the words colba island (sic) positioned underneath the alligator."

Lacoste Alligator S.A. ("opposer") filed a notice of opposition against the registration of applicant's mark on the grounds of priority of use and likelihood of confusion pursuant to Section 2(d) of the Trademark Act of 1946, 15 U.S.C. §1052(d), and dilution pursuant to Section 43(c) of the Trademark Act of 1946, 15 U.S.C. §1125(c).  Opposer alleged that it has been continuously using marks consisting of alligator designs in connection with clothing and other products prior to any date on which applicant may rely, that opposer's alligator design marks have become famous prior to applicant's first use of its mark, and that applicant's mark is likely to cause confusion with opposer's marks and is likely to dilute the distinctive quality of opposer's marks. Opposer also alleged ownership of the following registered marks:

1.   Registration No. 1108987 for the design of an alligator shown below for "men's, women's and children's

sport shirts and sweaters, men's socks, outer shorts, hats and caps, women's and children's dresses."[1]



2.     Registration No. 2004314 for the design of an alligator shown below for "polo shirts, sweatshirts, blousons,[2] shirts, pants, shorts, skirts, dresses, jogging suits, sweaters, jackets, parkas, headwear, robes, swimwear, footwear, socks, belts, gloves."[3]



Applicant, in its answer, admitted that opposer had prior use of its mark and that opposer's marks had become famous prior to applicant's first use of its mark.

---

[1] Issued December 12, 1978; Sections 8 and 15 affidavits accepted and acknowledged; renewed.

[2] A "blouson" is a dress or shirt with a fitted waistband over which material blouses.

[3] Issued October 1, 1996; Sections 8 and 15 affidavits accepted and acknowledged; renewed.  Opposer also pleaded ownership of Registration No. 2506262 for the mark ALLIGATOR, in typed drawing form, for shirts, and Registration No. 2643738 for the mark CROCODILE, in typed drawing form, for polo shirts.  Because the design marks are closer to applicant's mark than the word marks, we limit our discussion to opposer's design marks.

Applicant denied the remaining allegations in the notice of opposition.

The Record

By rule, the record includes applicant's application file and the pleadings. Trademark Rule 2.122(b), 37 CFR §2.122(b). In addition, the parties introduced the following testimony and evidence:

A.   Opposer's evidence.

1.   A notice of reliance on certified copies of opposer's pleaded registrations showing the current status and title to the registrations;

2.   A notice of reliance on the following articles from online magazines:

> a.   A September 18, 2005 article entitled "Lacoste's Riposte" from the *Time Magazine* website; and,
>
> b.   A March 24, 2006 article entitled "Lacoste's new look" from the *Business 2.0 Magazine* at "CNNMoney.com."

3.   The testimony deposition of Christian Vicquery, opposer's Vice President, with attached exhibits.

B.   Applicant's evidence.

1.   The testimony deposition of Jackie Sarracino, an employee of applicant and the wife of applicant's principal shareholder, with attached exhibits; and,

2. A notice of reliance with numerous exhibits.

Opposer lodged numerous objections to applicant's exhibits during the testimony deposition of Ms. Sarracino and reasserted the objections in its brief, as well as lodging objections to the exhibits attached to applicant's notice of reliance. There is no need to discuss any of the objections because none of applicant's evidence is relevant or material to the likelihood of confusion factors or elements of dilution that we must use in our analysis.

## Standing

Because opposer has properly made its pleaded registrations of record, opposer has established its standing. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982).

## Priority

Because applicant admitted that opposer had priority and because opposer has properly made its pleaded registrations of record, Section 2(d) priority is not an issue in this case as to the marks and the goods covered by the registrations. *King Candy Co. v. Eunice King's Kitchen, Inc.*, 496 F.2d 1400, 182 USPQ 108 (CCPA 1974).

Likelihood of Confusion

Our determination under Section 2(d) is based on an analysis of all of the probative facts in evidence that are relevant to the factors bearing on the issue of likelihood of confusion. *In re E. I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973). *See also, In re Majestic Distilling Company, Inc.,* 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003).

A.    The fame of opposer's alligator design marks.

This *du Pont* factor requires us to consider the fame of opposer's of marks. Fame, if it exists, plays a dominant role in the likelihood of confusion analysis because famous marks enjoy a broad scope of protection or exclusivity of use. A famous mark has extensive public recognition and renown. *Bose Corp. v. QSC Audio Products Inc.,* 293 F.3d 1367, 63 USPQ2d 1303, 1305 (Fed. Cir. 2002); *Recot Inc. v. M.C. Becton,* 214 F.3d 1322, 54 USPQ2d 1894, 1897 (Fed. Cir. 2000); *Kenner Parker Toys, Inc. v. Rose Art Industries, Inc.,* 963 F.2d 350, 22 USPQ2d 1453, 1456 (Fed. Cir. 1992).

Fame may be measured indirectly by the volume of sales and advertising expenditures of the goods and services identified by the marks at issue, "by the length of time those indicia of commercial awareness have been evident," widespread critical assessments and notice by independent sources of the products identified by the marks, as well as

the general reputation of the products and services. *Bose Corp. v. QSC Audio Products Inc.,* 63 USPQ2d at 1305-1306 and 1309. Although raw numbers of product sales and advertising expenses may have sufficed in the past to prove fame of a mark, raw numbers alone may be misleading. Some context in which to place raw statistics may be necessary (*e.g.,* the substantiality of the sales or advertising figures for comparable types of products or services). *Bose Corp. v. QSC Audio Products Inc.,* 63 USPQ2d at 1309.

Finally, because of the extreme deference that we accord a famous mark in terms of the wide latitude of legal protection it receives, and the dominant role fame plays in the likelihood of confusion analysis, it is the duty of the party asserting that its mark is famous to clearly prove it. *Leading Jewelers Guild Inc. v. LJOW Holdings LLC,* 82 USPQ2d 1901, 1904 (TTAB 2007).

In addition to applicant's admission in the answer that opposer's alligator design is a famous trademark, opposer proffered the following evidence to demonstrate the fame of its marks:

1.  Opposer first began selling clothing bearing the alligator design marks at least as early as 1950.[4]

---

[4] Vicquery Dep., p. 10.

2.    Opposer believes that it is the first clothing manufacturer to embroider its logo on the outside of the clothing.[5]

3.    Opposer made of record the revenues generated and units of product sold from 2003 through half of 2008, as well as its associated advertising expenditures.  The revenue figures and advertising figures were designated confidential so we may only refer to them in general terms.  We can say that on their face the numbers are relatively large.

4.    The September 18, 2005 article entitled "Lacoste's Riposte" from the *Time Magazine* website in which the author wrote that "[l]ike many Americans, Siegel [opposer's CEO] remembered a time when the ubiquitous French amphibian adorned the chests of the country-club set."[6]

5.    The March 24, 2006 article entitled "Lacoste's new look" from the *Business 2.0 Magazine* at "CNNMoney.com" in which the author reported on opposer's new line of fall and winter fashions.  The author made the following statements:

> Lacoste's famous logo – actually a
> crocodile but more commonly referred to
> as an alligator – was stitched onto
> cherry-red moon boots, shearling
> jackets, and leather porkpie hats.  The

---

[5] Vicquery Dep., pp. 9-10.
[6] This article also reports on opposer's resurgence over the last three years that corrected bad management decisions that caused the brand to have been pulled from the U.S. market "even though it had ruled fashion for a while."  Mr. Siegel revived a brand "that was considered to be dead."

> models strutting down the runway looked
> more suited to 1970's Brooklyn than the
> 80's country clubs where the croc once
> famously roamed.[7]

In view of applicant's admission that opposer's alligator mark is famous, we find that opposer's mark is famous for purposes of likelihood of confusion. While opposer's evidentiary showing is far from impressive, it would be unduly prejudicial to require more evidence from opposer in light of applicant's admission.[8]

B.  The similarity or dissimilarity and nature of the goods described in the application and registrations.

The goods in the application and opposer's registration are so similar as to be legally identical.

---

[7] This article also reports on how Mr. Siegel rescued opposer. "[T]he crocodile polo had its U.S. heyday in the late 70's and early 80's. But during the 1980's, American shoppers moved on." The brand languished until 2002, when opposer hired Mr. Siegel to revive its fortunes.

[8] Although we have found that the alligator design is famous for purposes of opposer's likelihood of confusion claim, we have not addressed the question of whether it is famous in the context of a dilution claim. Fame for likelihood of confusion and dilution is not the same. Fame for dilution requires a more stringent showing. *Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1694 (Fed. Cir. 2005); *Toro Co. v. ToroHead Inc.*, 61 USPQ2d 1164, 1170 (TTAB 2001). Likelihood of confusion fame "varies along a spectrum from very strong to very weak" while dilution fame is an either/or proposition – it either exists or it does not exist. *Id. See also Carefirst of Maryland Inc. v. FirstHealth of the Carolinas Inc.*, 77 USPQ2d 1492, 1507 (TTAB 2005) (likelihood of confusion "[f]ame is relative . . . not absolute"). A mark, therefore, may have acquired sufficient public recognition and renown to be famous for purposes of likelihood of confusion without meeting the more stringent requirement for dilution fame. *Toro Co. v. ToroHead Inc.*, 61 USPQ2d at 1170, *citing I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 47 USPQ2d 1225, 1239 (1st Cir. 1998) ("[T]he standard for fame and distinctiveness required to obtain anti-dilution protection is more rigorous than that required to seek infringement protection").

| Applicant's products | Opposer's products |
|---|---|
| belts, caps, pants, shirts, shoes, shorts and t-shirts | **sport shirts** and sweaters, men's socks, **outer shorts**, hats and **caps**, dresses (Reg. No. 1108987) |
| | polo shirts, sweatshirts, blousons, **shirts**, **pants**, shorts, skirts, dresses, jogging suits, sweaters, jackets, parkas, headwear, robes, swimwear, **footwear**, socks, **belts**, gloves (Reg. No. 2004314) |

Applicant argues that "[t]he logo design represents, identifies and symbolizes 'Cuban Heritage' and 'Cuban Culture' in clothing that is directed to the Cuban Community in the United States or the entire world."[9]  However, with respect to the goods, the question of likelihood of confusion must be determined on the basis of the goods set forth in the application and opposer's registrations, rather than on what any evidence may show those goods to be. *Canadian Imperial Bank of Commerce v. Well Fargo Bank,* 811 F.2d 1490, 1 USPQ2d 1813, 1815 (Fed. Cir. 1987).  Both applicant's and opposer's clothing products are broadly identified without any restrictions or limitations as to the type of clothing, channels of trade or classes of consumers. Therefore, we must assume that both applicant's and opposer's clothing encompass all types of clothing, and, as

---

[9] Applicant's Brief, p. 7.

discussed more fully below, that they are sold in the same channels of trade and to the same classes of consumers.

C.  The similarity or dissimilarity of likely-to-continue trade channels and classes of consumers.

Because the goods described in the application and the cited registration are identical, we must presume that the channels of trade and classes of purchasers are the same. *See Genesco Inc. v. Martz,* 66 USPQ2d 1260, 1268 (TTAB 2003) ("Given the in-part identical and in-part related nature of the parties' goods, and the lack of any restrictions in the identifications thereof as to trade channels and purchasers, these clothing items could be offered and sold to the same classes of purchasers through the same channels of trade"); *In re Smith and Mehaffey,* 31 USPQ2d 1531, 1532 (TTAB 1994) ("Because the goods are legally identical, they must be presumed to travel in the same channels of trade, and be sold to the same class of purchasers").

D.  The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

We now turn to the *du Pont* likelihood of confusion factor focusing on the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression. *In re E. I. du Pont De Nemours & Co., supra.* In a particular case, any one of these means of comparison may be critical in finding the marks to be similar. *In re White Swan Ltd.,* 9 USPQ2d 1534,

1535 (TTAB 1988); *In re Lamson Oil Co.,* 6 USPQ2d 1041, 1042 (TTAB 1988). In comparing the marks, we are mindful that where, as here, the goods are in part identical, the degree of similarity necessary to find likelihood of confusion need not be as great as where there is a recognizable disparity between the services. *Century 21 Real Estate Corp. v. Century Life of America,* 970 F.2d 874, 23 USPQ2d 1698, 1700 (Fed. Cir. 1992); *Schering-Plough HealthCare Products Inc. v. Ing-Jing Huang,* 84 USPQ2d 1323, 1325 (TTAB 2007); *Jansen Enterprises Inc. v. Rind,* 85 USPQ2d 1104, 1108 (TTAB 2007).

Furthermore, we are mindful that the test is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression so that confusion as to the source of the goods and services offered under the respective marks is likely to result. *San Fernando Electric Mfg. Co. v. JFD Electronics Components Corp.,* 565 F.2d 683, 196 USPQ 1, 3 (CCPA 1977); *Spoons Restaurants Inc. v. Morrison Inc.,* 23 USPQ2d 1735, 1741 (TTAB 1991), *aff'd unpublished,* No. 92-1086 (Fed. Cir. June 5, 1992). The proper focus is on the recollection of the average customer, who retains a general rather than a specific impression of the marks. *Winnebago Industries, Inc. v. Oliver & Winston, Inc.,* 207 USPQ 335, 344 (TTAB

1980); *Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106, 108 (TTAB 1975).

While the alligator design in applicant's mark and opposer's marks exhibit differences, the similarities of the designs outweigh the differences. The trademark designs of the parties are readily discernable as alligators or crocodiles. Because of the fame of opposer's alligator designs, the addition of the words "Colba Island" is not sufficient to distinguish applicant's mark from opposer's marks. With little opportunity for a side-by-side comparison and the fallibility of human recall, consumers encountering applicant's mark may mistakenly believe that applicant's clothing products are a new line for opposer. *See Grandpa Pidgeon's of Missouri, Inc. v. Borgsmiller,* 477 F.2d 586, 177 USPQ 573, 574 (CCPA 1973) (two differently portrayed elderly figures, one in conjunction with the word "Grandpa," used in connection with identical services, are likely to cause confusion); *Philip Morris, Inc. v. Rembrandt Tobacco Corp. (Overseas) Ltd.,* 185 USPQ 823, 824 (TTAB 1975) (applicant's registration of the mark PAUL REVERE in association with a picture of a cowboy on a horse for cigarettes is likely to cause confusion with opposer's use of Marlboro with numerous representations of cowboys and a western motif in connection with cigarettes).

Applicant contends that Cubans recognize the crocodile design of applicant's mark as representing the reptile shape of Cuba, and that as such the mark "represents, identifies and symbolizes 'Cuban Heritage' and 'Cuban Culture' in clothing."[10]  However, applicant has filed for a trademark registration that is national in scope, and, as indicated above, the products are not restricted to the Cuban community but are available to all consumers.  Accordingly, there is nothing to suggest that the vast majority of consumers will recognize applicant's entire mark, including the word COLBA ISLAND, as representing Cuban Heritage.

E.    The Cuban crocodile as a national symbol.

Applicant contends that its mark represents a national symbol of Cuba.  Even assuming that applicant's mark is a national symbol, that status does not make the mark registrable if it is likely to cause confusion with a previously registered mark.  Section 2(a) of the Trademark Act of 1946, 15 U.S.C. §1052(a), does not automatically confer registrability on a mark because it comprises a national symbol.  Section 2(a) simply prohibits the registration of marks that disparage or falsely suggest a connection with national symbols.

---

[10] Applicant's Brief, pp. 7 and 8.

F.   Balancing the factors.

In view of the fame of opposer's alligator design marks, the similarity of the marks and goods and the presumption that the channels of trade and classes of consumers are the same, we find that applicant's registration of its mark COLBA ISLAND and design for "belts, caps, pants, shirts, shoes, shorts and t-shirts" is likely to cause confusion with opposer's alligator design marks for "men's, women's and children's sport shirts and sweaters, men's socks, outer shorts, hats and caps, women's and children's dresses" and  "polo shirts, sweatshirts, blousons, shirts, pants, shorts, skirts, dresses, jogging suits, sweaters, jackets, parkas, headwear, robes, swimwear, footwear, socks, belts, gloves."

Because we have found that there is a likelihood of confusion, we do not decide the issue of dilution.

Decision:  The opposition is sustained and registration to applicant is refused.