NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE: LOUIS VUITTON MALLETIER,**
*Appellant*

---

2018-1651

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 79165769.

---

Decided: July 5, 2019

---

REBECCAH L. GAN, Wenderoth, Lind & Ponack, LLP, Washington, DC, argued for appellant.

MARY BETH WALKER, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Andrei Iancu. Also represented by THOMAS W. KRAUSE, CHRISTINA J. HIEBER, JOSEPH MATAL.

---

Before REYNA, HUGHES, and STOLL, *Circuit Judges.*

HUGHES, *Circuit Judge.*

Louis Vuitton Malletier appeals from a decision of the Trademark Trial and Appeal Board affirming the Examining Attorney's refusal to register its applied-for

trademark "APOGÉE" given the likelihood of confusion with the registered trademark "APHOGEE." *See In re Louis Vuitton Malletier*, No. 79165769 (T.T.A.B. Feb. 2, 2018). Because substantial evidence supports the Board's factual determinations for each likelihood of confusion factor, we affirm.

I

A.

On February 6, 2015, Louis Vuitton's predecessor-in-interest applied for trademark protection on the standard character mark APOGÉE, the name of a perfume it had recently developed. The company sought to register the mark in connection with a broad spectrum of goods, including cosmetic and skincare products. The Examining Attorney preliminarily approved the application and published the mark on January 19, 2016. Within a day, however, the Office of the Deputy Commissioner for Trademark Examination Policy received and granted a letter of protest filed by KAB Brands.

KAB argued that a consumer is likely to confuse APOGÉE with two of its registered marks. The first, Registration No. 4866902, protects the standard character mark APHOGEE used in connection with "Hair care lotions; Hair conditioners; Hair creams; Hair mousse; Hair oils; Hair shampoo; Hair sprays; Hair styling preparations; Non-medicated hair treatment preparations for cosmetic purposes; Non-medicated preparations all for the care of skin, hair and scalp; Hair moisturizers." J.A. 88. The second, Registration No. 1144631, protects the stylized mark "ApHOGEE" used in connection with "Hair Conditioner for Professional Use Only." J.A. 88.

The Examining Attorney agreed with KAB and refused to register APOGÉE to Louis Vuitton. After a series of revisions and rejections, Louis Vuitton limited its identification of the goods and/or services associated with the

proposed mark to "Perfumery; Perfumery products, namely, oils for perfumes and scents, perfumes; toilet water; eaux de parfum; eaux de Cologne; all of the foregoing for non-professional use and sold only within Louis Vuitton Malletier stores, on Louis Vuitton Malletier's website and within Louis Vuitton Malletier's store-within-store partnerships with high-end retail stores within Louis Vuitton Malletier's exclusive distributor network." J.A. 3. The Examining Attorney determined that these changes did not eliminate the likelihood of confusion and issued a final denial.

Louis Vuitton appealed, and the Board affirmed the Examining Attorney's refusal to register APOGÉE. Applying the likelihood of confusion factors identified in *In re E.I. DuPont DeNemours & Co.*, 476 F.2d 1357 (CCPA 1973), the Board first noted that APOGÉE and APHOGEE are similar in appearance, sound, connotation, and commercial impression. For example, the marks are both "comprised of a single word containing three syllables, commencing with the letter string 'A-P' and ending with the letters 'O-G-E-E.'" J.A. 5. Additionally, although APHOGEE includes the letter "H" and may seek to create an association to pH values, the Board observed that, because KAB registered the mark in standard format, "the letter combination 'PH' can be used in any format, including all upper case, which is not consistent with the chemical abbreviation." J.A. 5. Second, the Board determined that Louis Vuitton's perfumery products are closely related to KAB's hair and skin care products because "the involved goods fall under the general category of beauty and personal care products" and "it is not uncommon for perfumery and hair care products to be sold under the same trademark." J.A. 8–9. Third, the Board found that, given Louis Vuitton's store-within-store partnerships with high-end retail stores, the parties' goods travel though similar channels of trade. Finally, the Board noted that Louis Vuitton and KAB sell their goods to the general public, which "suggest[s] that purchases may be

made with no greater than ordinary care or consideration." J.A. 14. And even if consumers make their purchases with greater than ordinary care, the Board observed that this factor is, at best, neutral because "the similarity between the marks and related nature of the goods as identified outweigh any sophisticated or careful purchasing decision." J.A. 14.

Louis Vuitton now appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## II

The Board's determination of likelihood of confusion is a legal conclusion that implicates underlying factual findings. *See In re Viterra, Inc.*, 671 F.3d 1358, 1361 (Fed. Cir. 2012). We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Gartside*, 203 F.3d 1305, 1312 (Fed. Cir. 2000) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

## III

Louis Vuitton argues that the Board erred in concluding that consumers are likely to confuse the applied-for mark APOGÉE with the registered mark APHOGEE. Under § 2(d) of the Lanham Act, "[n]o trademark . . . shall be refused registration on the principal register on account of its nature unless it . . . [c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1052(d). We determine whether there is a likelihood of confusion using the *DuPont* factors. *See In re Viterra, Inc.*, 671 F.3d at 1361. Each *DuPont* factor implicates factual findings. *See id.*

The parties dispute only the first four *DuPont* factors. *See In re Mighty Leaf Tea*, 601 F.3d 1342, 1346 (Fed. Cir. 2010) (noting that not every *DuPont* factor is relevant in every case and that "only factors of significance to the particular mark need be considered"). They include,

 (1) The similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.

(2) The similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use.

(3) The similarity or dissimilarity of established, likely-to-continue trade channels.

(4) The conditions under which and buyers to whom sales are made, i.e. 'impulse' vs. careful, sophisticated purchasing.

*DuPont*, 476 F.2d at 1361.

We consider each factor in turn. Because substantial evidence supports the Board's factual findings for each factor, we affirm the conclusion that a consumer is likely to confuse APOGÉE with APHOGEE.

## A.

First, we address whether the marks are similar in appearance, sound, connotation, and commercial impression. Louis Vuitton argues that the marks "are manifestly different in sight, sound, and commercial meaning . . . ." Pet. Br. 12. It contends that a consumer would view APOGÉE as inherently French, suggesting that the "product[] reflect[s] the 'height' of continental chic," while a consumer would interpret the "PH" in APHOGEE as having "primary significance both in terms of look and feel generally, and commercial impression more specifically." Pet. Br. 13.

Substantial evidence supports the Board's determination that APOGÉE and APHOGEE are similar in appearance, sound, and commercial impression. First, the record shows that the marks, although not identical, are alike in overall appearance. Both consist "of a single word containing three syllables, commencing with the letter string 'A-P' and ending with the letters 'O-G-E-E.'" J.A. 5. APHOGEE, moreover, is a standard character mark, meaning it "make[s] no claim to any particular font style, color, or size of display." *See Citigroup Inc. v. Capital City Bank Grp., Inc.*, 637 F.3d 1344, 1349 (Fed. Cir. 2011). Nothing prevents KAB from styling APHOGEE exactly as Louis Vuitton styles APOGÉE.

Second, the record shows APHOGEE "may be pronounced in a similar manner as the mark APOGÉE . . . ." J.A. 6. APHOGEE is not a recognizable word, and because KAB registered the mark in standard characters, nothing compels KAB to emphasize the letter "H." KAB could choose a format that minimizes this letter and thus suggests an alternate pronunciation. And even if it chose to accentuate the letter "H," we have observed that "there is no correct pronunciation of a trademark" and that "consumers may pronounce a mark differently than intended by the brand owner." *In re Viterra*, 671 F.3d at 1367. Intent of the mark holder is not dispositive. *See id.*

Finally, the record shows that the marks conjure similar commercial impressions. Neither APOGÉE nor APHOGEE is a recognizable English word. Louis Vuitton argues that a consumer would know to translate APOGÉE, a French word, into "height." J.A. 4. But nothing suggests that a consumer would not similarly translate APHOGEE into "height" as a variant of APOGÉE. To the extent Louis Vuitton contends that the "H" in APHOGEE creates the "general impression that Registrant's marks relate to a low acidity or alkalinity" rather than "height," Pet. Br. 13–14, it does not support this assertion with anything except attorney argument. Nor can it. Because APHOGEE is a

standard character mark, the letter combination "PH" can "be used in any format, including all upper case, which is not consistent with the chemical abbreviation." J.A. 5.

## B.

We next address the relatedness of the goods. Louis Vuitton contends that the Board erred in finding that perfumery and hair care products are related.

Substantial evidence supports the Board's determination that the goods are related. Goods need not be identical or similar in kind to be related. *See Recot, Inc. v. Becton*, 214 F.3d 1322, 1329 (Fed. Cir. 2000). Instead, what matters is whether "the circumstances surrounding their marketing are such that they could give rise to the mistaken belief that [the goods] emanate from the same source." *See Coach Servs. v. Triumph Learning LLC*, 668 F.3d 1356, 1369 (Fed. Cir. 2012). Here, evidence shows that perfumery and hair care products are complementary products which often emanate from the same source.[1] *See In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 1567 (Fed. Cir. 1984). Jack Black, for example, sells "Double Header Shampoo + Conditioner" as well as "Blue Mark Eau De Parfum." J.A. 409, 411. Philosophy sells "Amazing Grace" in perfume and shampoo form. J.A. 426, 433–34, 532–38. Calvin Klein sells an "ETERNITY" perfume and an "ETERNITY" hair and skincare wash. J.A. 461–64. And Salvatore Ferragamo sells "Aqua Essenziale" in perfume and shampoo form. J.A. 469–72.

---

[1] And even if we agreed that perfumery and hair care products are unrelated, the mark APHOGEE extends to "[n]on-medicated preparations all for the care of skin, hair and scalp," i.e., skincare products such as lotions. The record is replete with examples of entities selling both skincare and perfumery products, and Louis Vuitton does not suggest that these products are unrelated.

Louis Vuitton contends that the Board's finding improperly assumes a relationship must exist between goods because they both fit within the general category of beauty products. We disagree. The Board did not rely solely on the fact that the registered mark and the applied-for mark cover goods related to the general category of beauty and personal care products. Instead, the Board assessed the complete record and determined, based on all the evidence, that "it is not uncommon for perfumery and hair care products to be sold under the same trademark." J.A. 9. As noted above, the record substantiates this determination.

## C.

We now address the channels of trade through which the goods travel. Louis Vuitton asserts that the Board erred in finding that the goods may be sold in similar channels of trade because goods carrying the APOGÉE mark may be sold only in its own stores or in "Louis Vuitton Malletier's store-within-store partnerships with high-end retail stores within Louis Vuitton Malletier's exclusive distributor network." Pet. Br. 22–23.

Substantial evidence supports the Board's determination that the channels of trade are similar. We look to the registration to identify the applicable channels of trade. *Bose Corp. v. QSC Audio Prods., Inc.*, 293 F.3d 1367, 1377 (Fed. Cir. 2002). The registration for APHOGEE lacks any trade channel restrictions. We thus presume KAB's goods travel in all normal channels of trade, *see Packard Press, Inc. v. Hewlett-Packard Co.*, 227 F.3d 1352, 1361 (Fed. Cir. 2000), including "traditional brick-and-mortar and online department stores" and "high-end retail stores,"[2] J.A. 12.

---

[2]    Louis Vuitton argues that there is no evidence that any high-end retail stores have sold KAB's goods. But evidence of actual practice does not limit the scope of an unrestricted registered mark. *See Octocom Sys., Inc. v. Houston*

Louis Vuitton's application, on the other hand, restricts trade channels. It provides for sales in its own stores and "within Louis Vuitton Malletier's store-within-store partnerships with high-end retail stores within Louis Vuitton Malletier's exclusive distributor network." J.A. 12. By its plain language, the application provides for sales in high-end retail stores. High-end retail stores, in other words, are a channel of trade appropriate for both goods.[3] The record, moreover, contains extensive evidence that high-end retail stores sell a mix of perfumery and hair and skincare products like the goods at issue here.

Louis Vuitton argues that its goods would not generally be sold within a high-end retail store because its application provides only for sales through store-within-store partnerships with high-end retail stores. But the application does not define the term "store-within-store partnership[]," and Louis Vuitton concedes that the only record evidence describing such partnerships is a picture of a display wall and an article on a pop-up store in the common space of a mall in California. Oral Arg. at 12:18–14:20, http://oralarguments.cafc.uscourts.gov/default.aspx?fl= 2018-1651.mp3. Because the identified pop-up store is not located *within* any store we reject the notion that it defines

---

*Computer Servs., Inc.*, 918 F.2d 937, 943 (Fed. Cir. 1990) ("[A]n application with an identification of goods having no restriction on trade channels obviously is not narrowed by testimony that the applicant's use is, in fact, restricted to a particular class of purchasers.").

[3] Although we have observed that "products should not be deemed related simply because they are sold in the same kind of establishments," the record suggests that these "products are sold in close proximity to one another" because they both would feature in the beauty section of the brick-and-mortar stores and their online catalogs. *See Recot*, 214 F.3d at 1330.

a "store-within-store partnership[] with high-end retail stores." And indeed, Louis Vuitton admitted during oral argument that it also has a partnership with high-end retail store Henri Bendel in New York, which precludes interpreting a store-within-store partnership as an independent pop-up store within the general space of a mall. Oral Arg. at 3:10–3:25, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2018-1651.mp3. Without any evidence suggesting that a "store-within-store partnership[] with high-end retail stores" differs in any significant respect from a high-end retail store, we reject the contention that a "high-end retail store" is not a channel of trade appropriate for goods covered by the applied-for mark as well as the registered mark.

D.

Finally, we address the conditions of sale for the parties' goods. Because Louis Vuitton appears to have blended its argument about conditions of sale with its argument about channels of trade, we only briefly assess this *DuPont* factor.

Substantial evidence supports the Board's determination that the conditions of sale factor is neutral. Louis Vuitton's perfume retails for $240 per 100ml bottle and $350 per 200ml bottle, while KAB's hair products retail for around $11 per 16oz bottle. Given the price differential, it seems unlikely that a consumer would mistakenly associate Louis Vuitton's perfume with KAB's hair care products (or skincare products). *See Recot*, 214 F.3d at 1329 ("When products are relatively low-priced and subject to impulse buying, the risk of likelihood of confusion is increased because purchasers of such products are held to a lesser standard of purchasing care."). But because the APHOGEE registration and APOGÉE application do not restrict purchasers or pricing, nothing prevents Louis Vuitton from developing a low-cost version of its product or KAB from developing a high-end version of its product. *Cf.*

*Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1324–25 (Fed. Cir. 2014). We agree with the Board that these considerations negate each other, leaving this factor neutral.

## IV

We have considered the Louis Vuitton's remaining arguments and find them unpersuasive. Because substantial evidence supports the Board's determinations for each *DuPont* factor, we affirm its conclusion that a consumer is likely to confuse the applied-for mark APOGÉE with the registered mark APHOGEE.[4]

**AFFIRMED**

---

[4] Because we affirm the likelihood of confusion based on the registered mark APHOGEE, we need not reach Louis Vuitton's argument for the stylized mark ApHOGEE (Registration No. 1144631).