THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed:
16 October 2009
AD

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————————

**Trademark Trial and Appeal Board**
————————

In re G.B.I. Tile and Stone, Inc.
————————

Serial No. 77369073
————————

Natu J. Patel of Patel Law Firm, P.C. for G.B.I. Tile and
Stone, Inc.

Patty Evanko, Trademark Examining Attorney, Law Office 117
(Loretta C. Beck, Managing Attorney).
————————

Before Seeherman, Drost, and Cataldo, Administrative
Trademark Judges.

Opinion by Drost, Administrative Trademark Judge:

On January 10, 2008, G.B.I. Tile and Stone, Inc.

(applicant) filed an application (No. 77369073) to register

the mark CAPRI COLLECTION, in standard character form, on

the Principal Register for "stones, ceramic floor tiles,

porcelain floor tiles" in Class 19.  The application is

based on applicant's assertion of a bona fide intention to

use the mark in commerce and it contains a disclaimer of

the term "Collection."

The examining attorney has refused to register applicant's mark under Section 2(d) of the Trademark Act (15 U.S.C. § 1052(d)) because of a registration for the mark CAPRI, in typed or standard character form, for "roofing tiles and trim" in Class 19.[1]  When the refusal was made final, a request for reconsideration and this appeal followed.

In a case where the issue is likelihood of confusion, we analyze the facts as they relate to the relevant factors set out in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 567 (CCPA 1973).  *See also In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1203 (Fed. Cir. 2003) and *Recot, Inc. v. Becton*, 214 F.3d 1322, 54 USPQ2d 1894, 1896 (Fed. Cir. 2000).  In considering the evidence of record on these factors, we must keep in mind that "[t]he fundamental inquiry mandated by § 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."  *Federated Foods, Inc. v. Fort Howard Paper Co.*, 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976).

We begin our analysis by looking at "'the similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression.'"

---

[1] Registration No. 1701802 issued July 21, 1992 (renewed).

2

*Palm Bay Imports Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005) (quoting *du Pont*, 177 USPQ at 567). In this case, the marks are CAPRI and CAPRI COLLECTION. The marks are presented in typed or standard character form so there are no differences between the displays of the marks. *Cunningham v. Laser Golf Corp.*, 222 F.3d 943, 55 USPQ2d 1842, 1847 (Fed. Cir. 2000) ("Registrations with typed drawings are not limited to any particular rendition of the mark and, in particular, are not limited to the mark as it is used in commerce"); and *In re Cox Enterprises Inc.*, 82 USPQ2d 1040, 1044 (TTAB 2007)("We must also consider that applicant's mark, presented in typed or standard character form, is not limited to any special form or style as displayed on its goods").

The only difference between the marks is applicant's addition of the disclaimed word "Collection" to registrant's mark. Disclaimed matter is often "less significant in creating the mark's commercial impression." *In re Code Consultants, Inc.*, 60 USPQ2d 1699, 1702 (TTAB 2001). "Regarding descriptive terms, this court has noted that the 'descriptive component of a mark may be given little weight in reaching a conclusion on the likelihood of confusion.'" *Cunningham*, 55 USPQ2d at 1846, *quoting*, *In re*

*National Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 752 (Fed. Cir. 1985). However, while a disclaimed term … may be given little weight … it may not be ignored." *M2 Software Inc. v. M2 Communications Inc.*, 450 F.3d 1378, 78 USPQ2d 1944, 1948-49 (Fed. Cir. 2006). The examining attorney has pointed out that a "collection" is defined as "'a group of things' and thus, immediately describes a feature of the stones and tiles, namely, that they are part of a group of related things." First Office Action at 3.

Applicant argues that the "additional term 'COLLECTION' serves to visually distinguish the Applicant's Mark and the Cited Mark. Thus, consumers who view the mark will see the entire phrase 'CAPRI COLLECTION,' and consider the mark in its entirety." Brief at 12. We must, of course, consider applicant's mark in its entirety, but we cannot agree that this additional term distinguishes the marks. The only term in registrant's mark is the term CAPRI and it is the only distinctive term in applicant's mark. This common identical term in both marks results in marks that are very similar in sound, appearance, meaning, and commercial impression. The presence of the additional term "Collection" would not be likely to distinguish the marks since it would merely indicate that applicant offers a group of products under its mark. *See In re*

*Jewelmasters, Inc*., 221 USPQ 90 (TTAB 1983) (JEWELMASTERS for retail jewelry store services held likely to be confused with MASTER JEWELER'S COLLECTION for jewelry); and *Drexel Enterprises, Inc. v. Prescolite Mfg. Corp*., 148 USPQ 92 (TTAB 1965) (HERITAGE COLLECTION, Collection disclaimed, for lighting fixtures confusingly similar to HERITAGE for a line of furniture). *See also Hewlett-Packard Co. v. Packard Press Inc*., 281 F.3d 1261, 62 USPQ2d 1001, 1004 (Fed. Cir. 2002) ("Given the dominance of the word 'Packard' in PACKARD TECHNOLOGIES and HP's heavy involvement in the technology field, this court agrees with the Board that the similarities in the marks [PACKARD TECHNOLOGIES and HEWLETT PACKARD] outweigh the differences. Substantial evidence supports the Board's finding that the marks are similar in their entireties").

The next *du Pont* factor that we will consider is whether applicant's stones, ceramic floor tiles, and porcelain floor tiles are related to registrant's roofing tiles and trim. Based on the evidence that it submitted, applicant argues:

> Roofing tiles and trim are used for roofing purposes, and are too fragile to be used for floors. On the other hand, floor tiles are used for floors and are durably designed for foot traffic, yet cannot be used for roofing purposes. Since the goods differ in nature and are not used for the same purpose, they are not substitutes for each other. In fact, purchasers

> understand that floor tiles and roofing tiles are constructed for entirely different purposes, and cannot be used interchangeably. Therefore, again, as established by the Applicant based on the competent evidence, the goods do not compete and consumers are not likely to be confused between the two trademarks.

Applicant's Brief at 8 (citations to record omitted).

First, we must consider the goods as they are described in the application and registration. *Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990) ("The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which the sales of goods are directed"). *See also Paula Payne Products v. Johnson Publishing Co.*, 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973) ("Trademark cases involving the issue of likelihood of confusion must be decided on the basis of the respective descriptions of goods"). We also do not read limitations into the identification of goods. *Squirtco v. Tomy Corp.*, 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983)("There is no specific limitation and nothing in the inherent nature of Squirtco's mark or goods that restricts

the usage of SQUIRT for balloons to promotion of soft drinks. The Board, thus, improperly read limitations into the registration"). Therefore, we must presume that registrant's roofing tiles could include all types of roofing tiles regardless of their material composition.[2]

More importantly in this case, while applicant points out that floor tiles and roofing tiles are different goods and not interchangeable, goods may nonetheless be related even if they are not identical, competitive, or combinable. "[G]oods that are neither used together nor related to one another in kind may still 'be related in the mind of the consuming public as to the origin of the goods. It is this sense of relatedness that matters in the likelihood of confusion analysis.'" *Shen Mfg. Co. v. Ritz Hotel Ltd.*, 393 F.3d 1238, 73 USPQ2d 1350, 1356 (Fed. Cir. 2004) (citing *Recot, Inc. v. Becton*, 54 USPQ2d at 1898). *See also McDonald's Corp. v. McKinley*, 13 USPQ2d 1895, 1898 (TTAB 1989) ("In order to find that there is a likelihood of confusion, it is not necessary that the goods or services on or in connection with which the marks are used be identical or even competitive. It is enough if there is

---

[2] Applicant emphasizes that the "Cited Mark is **_specifically restricted_** to 'Roofing Tiles,' not tiles in general" (Reply Brief at 3), a point not in dispute.

a relationship between them such that persons encountering them under their respective marks are likely to assume that they originate at the same source or that there is some association between their sources").

Here, the examining attorney has submitted numerous trademark registrations to show that applicant's and registrant's goods are registered by a single entity under a common mark.

> No. 1938175 for wall, floor and roofing tiles made of limestone or marble
>
> No. 2391924 for wall, floor, ceiling, outdoor and roofing tiles of clay, gypsum, ceramic, earthenware, marble and stone
>
> No. 2450417 for roofing tiles, mosaic roofing tiles and non-metal floor tiles and mosaic floor tiles made primarily of non-metal
>
> No. 2843455 for tiles of clay or earthenware for wall, floor or ceiling; roofing tiles
>
> No. 3419475 for stone roofing tiles, wood tile floors, wall tiles, earthenware tiles, clay roofing tiles, ceramic enamel tiles, cement mortar roofing tiles, glass roofing tiles
>
> No. 3494848 "non-metal roofing tiles" and "tiles of clay, gypsum, ceramic or earthenware for wall, floor [and] ceiling"
>
> No. 2940894 for non-metal floor tiles; ceramic wall tiles; ceramic floor tiles and non-metal roofing tiles
>
> No. 3395750 for "roofing tiles" and "floor tiles"
>
> No. 3424718 for cement mortar roofing tiles; ceramic enamel tiles; ceramic roofing tiles; ceramic tiles; ceramic tiles for flooring and facing; ceramic tiles

8

for flooring and lining; ceramic tiles for tile floors and coverings

No. 2551530 for roofing tiles, stucco tiles, vinyl tiles, wall tiles, floor tiles, ceiling tiles; natural and artificial stones

No. 3135425 for "ceramic tiles for tile floors and coverings" and "stone roofing tiles"

No. 3291737 for tiles of clay for roofing; tiles of clay, glass, gypsum, ceramic or earthenware for floors; and non-metal flooring tiles

"Third-party registrations which cover a number of differing goods and/or services, and which are based on use in commerce, although not evidence that the marks shown therein are in use on a commercial scale or that the public is familiar with them, may nevertheless have some probative value to the extent that they may serve to suggest that such goods or services are of a type which may emanate from a single source." *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988). *See also In re Infinity Broadcasting Corp. of Dallas*, 60 USPQ2d 1214, 1217-18 (TTAB 2001). These registrations support the examining attorney's argument that registrant's roofing tiles and applicant's stones, ceramic floor tiles and porcelain floor tiles are likely to originate from a common source. *In re Association of the United States Army*, 85 USPQ2d 1264 (TTAB 2007) ("We find, first, that applicant's 'association services' are related to the Class 35 and Class 42 services

9

recited in the '479 and '969 registrations.  The Trademark

Examining Attorney has made of record six use-based third-

party registrations…").

The examining attorney also included internet evidence

that roofing tiles and floor tiles originate from a common

source (emphasis added).

> MarbleMaster sells and fabricates natural *stone floor
> tiles* and slab building materials made from the finest
> granite, marble, travertine and slate.  We specialize
> in hospitality, high end commercial and residential
> building projects serving customers across America.
> *Roof slate and slate tile* is an excellent choice for
> construction projects.  Our product line includes
> travertine moldings, *roof slate tiles* and custom
> granite countertops direct to home builders and
> remodelers.  We offer a wide selection of *Porcelain
> tile flooring* making it a high performance choice for
> your home.
> www.marblemaster.com
>
> Our fine quality stone, expert craftsmanship and ever-
> expanding production facilities have made Camara Slate
> a national leader in all types of architectural,
> *flooring and roofing* products.
> www.camaraslate.com
>
> Zion Tile Corporation
> Floor Tiles
> Roof Tiles
> www.ziontile.com
>
> Handmade, Wood Fired Terra Cotta Tile Floors…
> Handmade Tellacotta [sic] Clay Tile Roofs – Wood
> Fired…
> Reclaimed Antique Clay Roof Tile…
> Specialty Clay Floor Tiles and Decorative Floor Tile
> Design
> www.barronica.com

We must also address applicant's evidence that, according to applicant, shows that the goods are not related. Applicant has submitted copies of numerous registrations and argues that:

> [T]here are third party roofing tile manufacturers who sell roofing tiles and do not sell any floor tiles. There are over thirty-five (35) USPTO trademark registrations specifically for floor tiles and not roofing tiles. Similarly, there are over thirty-six (36) USPTO registrations specifically for roofing tiles and not floor tiles. Furthermore, there are over three hundred (300) live, use-based registrations for floor tiles, but not roof tiles, in international class 019, and over one hundred (100) live, use-based registrations for roofing or roof tiles, but not floor or flooring tiles, in international class 019.

Brief at 5 (citations to record omitted).

As we indicated above, third-party registrations can be used by examining attorneys to suggest that the goods are related because the same party has registered a common mark for the goods at issue in a likelihood of confusion case. Similarly, applicants may submit sets of third-party registrations to suggest the opposite, i.e., that the Office has registered the same mark to different parties for the goods at issue. *See In re Thor Tech, Inc.*, 90 USPQ2d 1634, 16 (TTAB 2009) ("On the other hand, applicant has submitted copies of 13 sets of registrations for the same or similar marks for different types of trailers owned by different entities arguing, in essence, that the third-

11

party registrations serve to suggest that the listed goods are of a type which may emanate from different sources"). *See also Helene Curtis Industries v. Suave Shoe Corp.*, 13 USPQ2d 1618, 1624 (TTAB 1989) ("In connection with its related goods arguments, plaintiff has made of record numerous third-party registrations and exhibits to show that it is common in the trade for the same mark to appear both on personal care products and wearing apparel emanating from the same source. Defendant, on the other hand, has introduced registrations and exhibits to show registration and use of the same or similar marks on these same types of products, but emanating from different sources").

Applicant's evidence does *not* consist of third-party registrations issued for the same or similar marks to different parties for the goods of applicant and registrant. It simply consists of registrations that list one of applicant's goods but do not include any goods that are in the cited registration, or registrations that list one of the goods in the cited registration but do not include any of applicant's identified goods. We give this evidence much less weight. There is no requirement for goods to be found related that all or even a majority of the sources of one product must also be sources of the

other product.  Therefore, evidence showing only that the source of one product may not be the source of another product does not aid applicant in its attempt to rebut the evidence of the examining attorney.  Second, the mere fact that some goods are not included in a registration's identification of goods does not establish that *the owner of the mark* has not registered the mark for those goods in another registration since, for example, the registrant may have begun using the mark on those goods at a later date. Third, the law recognizes that trademark owners have different marks that are used as a house mark, a mark for a line of products, and a mark for specific items.  It is, therefore, to be expected that many registrations for marks would not cover all of a party's goods and services. Indeed, many of the registrations that applicant submitted contain only a single item.  *See, e.g.,* Registration Nos. 27980687, 2789848, 2799331, 2805904, 2870717, 2912907, 2743604, 2788725, 2841899, 2955456, 2932544, 2988806, and 3042379.  The fact that applicant was able to find and submit for the record these registrations of marks for individual items does not rebut the examining attorney's evidence showing the existence of numerous third-party registrations using the same marks on a variety of items, including applicant's and registrant's goods.  Therefore,

13

contrary to applicant's argument (Reply Brief at 7), while this evidence provides some indication that there are many trademarks that are not registered for both products, it does not rebut the examining attorney's evidence that the goods are related.

We have also considered applicant's evidence that registrant[3], and two other entities, "only sell roofing tiles and do not sell any floor tiles" (Gonzalez dec. at 2-3) and that applicant does not sell roofing tiles. Again, as set out earlier, goods can be related even if they are not identical, interchangeable, or combinable. There is no requirement that either applicant or registrant also be the source of the other's goods before the goods can be held to be related. *See Recot*, 54 USPQ2d at 1898 (citations to record omitted):

> The Board found that the FIDO LAY dog treats were not identical or closely related to the FRITO-LAY human snacks, and further found that none of Recot's collateral or licensed goods were related to dog treats. The Board declined to consider the lay testimony of both parties' witnesses that several companies produce and sell both pet and human foods, because it deemed the evidence of no persuasive value.
>
> The Board erred when it refused to consider the lay evidence that several large companies produce and sell both pet and human food in deciding whether a consumer would reasonably believe that FIDO LAY dog treats

[3] Applicant argues that "[y]et to date, the Registrant has not amended the Cited Mark to include floor tiles." Reply Brief at 6. However, we note that a registrant would not be permitted to expand the scope of the identification of goods.

originated from the same source as FRITO-LAY human snacks.

Indeed, goods can be related even if there is *no evidence that any entity*, much less the applicant or registrant, is the source of both applicant's and registrant's goods. *In re Majestic Distilling Co.*, 315 F.3d 1311, 65 USPQ2d 1201, 1204 (Fed. Cir. 2003) ("Although the PTO apparently found no evidence of any manufacturer who both brews malt liquor and distills tequila, Majestic has not shown that the PTO's lack of evidence in that regard is relevant. Unless consumers are aware of the fact, if it is one, that no brewer also manufactures distilled spirits, that fact is not dispositive"). The evidence here clearly demonstrates that there are entities that are the source of roofing tiles and floor tiles.

The evidence of record convinces us that the goods, while different and not interchangeable, are nonetheless related.

Regarding prospective purchasers, applicant's declarant maintains that the "average purchaser of roofing tile is a professional contractor or other construction professional," (Gonzalez dec. at 1), and that the customers of applicant's and registrant's goods are different. *See* Gabrielson dec. at 2 ("Both products are marketed towards

completely different customer bases, with Capri Roofing
Tiles being marketed to professionals in the roofing tile
industry, and Capri Collection Floor Tiles being marketed
to professionals in the floor tile industry"). While this
may be true with respect to these two specific entities,
there is evidence that the purchasers of roofing tiles and
flooring tiles overlap. Both types of products would be
marketed to architects, general contractors, building
owners, and even individuals who are constructing or
remodeling a home. *See e.g.*, www.camaraslate.com ("We hope
our site is helpful to the architect specifying our
products [roofing slate and floor tiles], the supplier or
contractor using our products, or most importantly the
homeowner choosing our products"); and www.marblemaster.com
("Our product line includes travertine moldings, roof slate
tiles… We offer a wide selection of Porcelain tile flooring
making it a high performance choice for your home… No
middlemen, no distributors, no marketing channel markups …
just direct to you at tremendous savings"). Therefore, the
purchasers of these goods would at least overlap. While
the purchasers of these products are likely to be
professionals or at least somewhat careful purchasers, this
would not mean there is no likelihood of confusion when the
very similar marks CAPRI and CAPRI COLLECTION are used on

16

products that have been shown to originate from a common source. *In re Hester Industries, Inc.*, 231 USPQ 881, 883 (TTAB 1986) ("While we do not doubt that these institutional purchasing agents are for the most part sophisticated buyers, even sophisticated purchasers are not immune from confusion as to source where, as here, substantially identical marks are applied to related products"). *See also In re Total Quality Group Inc.*, 51 USPQ2d 1474, 1477 (TTAB 1999) ("[E]ven careful purchasers are not immune from source confusion").

In addition, the examining attorney has also submitted evidence that the channels of trade for roofing tiles and floor tiles at least overlap. *See* www.builddirect.com ("BuildDirect is able to offer high-quality building materials at unbeatable pricing. For flooring, decking, countertops, roofing, siding and more"); www.ziontile.com ("Zion Tile is a prestigious company representing manufacturers of various clay and ceramic roof tiles, floor tiles, pavers, bricks, and pool copings… For additional information and or samples, simply tour our site and make your selections").

Applicant also points out that "the declarations of two experts … have attested under oath that there is no likelihood of consumer confusion between the Cited Mark and

the Applicant's mark." Brief at 6. These experts are applicant's senior vice-president and its director of operations. Request for Reconsideration, Exhibits A and B. We are not convinced that these declarations, when viewed against the entire record, show that there is no likelihood of confusion. As the Court of Customs and Patent Appeals held:

> The opinion of an interested party respecting the ultimate conclusion involved in a proceeding would normally appear of no moment in that proceeding. Moreover, it is known at the outset. One may assume, for example, that an opposer believes confusion likely and that a defending applicant does not… Under no circumstances, may a party's opinion, earlier or current, relieve the decision maker of the burden of reaching his own ultimate conclusion on the entire record.

*Interstate Brands Corp. v. Celestial Seasonings, Inc*., 576 F.2d 926, 198 USPQ 151, 154 (CCPA 1978).

One other principle we must consider is that, to the extent that we have any doubt, we must resolve this doubt in favor of the registrant. *In re Chatam International Inc.*, 380 F.3d 1340, 71 USPQ2d 1944, 1948 (Fed. Cir. 2004) and *In re Hyper Shoppes (Ohio), Inc*., 837 F.2d 463, 6 USPQ2d 1025, 1026 (Fed. Cir. 1988). Accordingly, we find that the marks are very similar and that the goods are related. Furthermore, the purchasers and channels of trade

are overlapping. Therefore, we hold that confusion is likely here.

Decision: The examining attorney's refusal to register applicant's CAPRI COLLECTION mark under Section 2(d) of the Trademark Act is affirmed.